## FINANCE SECURITY CO., Inc., v. PASSMAN.

### No. 1894.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1938.

M. I. Varnado, of Bogalusa, and J. Vol Brock, of Franklinton, for appellant.

Talley & Richardson, of Bogalusa, for appellee.

OTT, Judge.

The suit is to recover the balance due on a note executed by defendant on August

31, 1937, for the sum of $539.58, payable in monthly installments of $89.93 each, with interest at eight per cent per annum from maturity, and providing for reasonable attorneys fees, which shall not be less than 15 per cent due on said note, subject to a credit of $89.93. The note is secured by a chattel mortgage on a one and one half ton Plymouth Truck purchased by the defendant from the Quick Service Auto Company, Inc., of Franklinton, and the lien and privilege created by this chattel mortgage on the truck is sought to be recognized and enforced.

The defendant admits signing the note and chattel mortgage, but alleges that the note was paid in full between September 5th and 10th, 1937, to the plaintiff in accordance with a receipt reading as follows:

"No. 15561. 11-26-1937.

"Received of Otis Passman Four Hundred Forty Nine and 65/100 Dollars. Dealer, Quick Service Auto Co. Inc. Date Due ——— Contract No. ———
        "Finance Security Co., Inc.
        "By Opal Thompson."

Judgment was rendered in favor of plaintiff as prayed for, thus overruling the plea of payment advanced by defendant. From the judgment, defendant has appealed. Plaintiff has answered the appeal and asked that it be allowed a suit fee of $50 in addition to the 15 per cent. allowed in the judgment.

■ The only question presented for decision in the case is whether or not the defendant paid the note as he claims and as the receipt would indicate. Having admitted the execution of the obligation, the defendant naturally bears the burden of proving that he has discharged it.

The plaintiff acquired the note in suit from the Quick Service Auto Company, Inc., and it appears from the evidence that the plaintiff financed considerable mortgage paper for the auto company. The plaintiff finance company furnished the auto company with blank receipts numbered in consecutive order and contained in a regular receipt book. The auto company was permitted to collect on notes handled by the finance company for it and issue receipts out of this blank receipt book for payments made on these notes.

The president of the auto company, Delos Passman, is a brother of the defendant. It is the contention of the defendant that the note and mortgage executed by him for part of the price of this truck, were merely temporary measures to take care of what is called a "floor plan" mortgage placed on the truck by another dealer; that, as a matter of fact, the purchase of the truck was really a cash transaction, and the execution of the note and mortgage was merely a convenience to the auto company in its financial arrangement; that he obtained the money from another brother in Monroe and paid his brother, the president of the auto company, $550 between the 5th and 10th of September to take up this note and thought his brother had taken care of it.

Delos Passman, the president of the auto company, absconded in December, 1937, having misappropriated quite a large sum of money which had been paid to him and his company on account of notes held by plaintiff finance company. It is shown by the evidence that, while the above quoted receipt is dated November 26, 1937, it was not actually signed and issued by Mrs. Opal Thompson, the book-keeper of the company, until after Delos Passman had absconded in December. The receipt was issued at the request of the defendant. It appears that Mrs. Thompson signed the receipts for the auto company for money paid on these notes of the finance company, and she had charge of the books of the auto company.

The defendant testified that he paid the $550 to his brother, Delos Passman, in cash, in the office of the auto company, but did not then secure or request a receipt, nor did he secure a return of the note. The note was for $539.58, and at the time he claims to have paid his brother this $550 in the early part of September there was no interest due on the note. It seems rather strange that he would give his brother $550 in cash without asking for a receipt or the return of the note, and without a very satisfactory explanation of his paying more than the amount due on the note. It is true that he claims that the price of the truck was $550, but he also admits that interest and carrying charges were included in the note which he claims was only to be held until he could get the money from his other brother in Monroe to take care of the note. Yet he paid not only the added interest in the note and carrying charges long before the note was due, but he actually overpaid the amount of the note and these added items by more than ten dollars.

To show his ability to pay the $550 which he claims to have paid his brother, Delos Passman, defendant introduced in evidence a cancelled check for $1000, dated September 1, 1937, payable to defendant and Bob Burch, signed by the Passman Equipment Company, Otto Passman. In connection with this check, defendant says that it was sent to him by his brother, Otto Passman, to enable him and Bob Burch to purchase additional stock for the store which they were operating, and that part of this money was used in purchasing the truck for use in the store business.

We come now to discuss the testimony of Mrs. Thompson, the young lady who signed the receipt. She says that the defendant asked her for the receipt in December, a few days after Delos Passman left the state. The defendant testifies that he got the receipt on the day it was dated, but he is contradicted in this by the lady who issued the receipt. Mrs. Thompson admits that she did not receive any money from defendant, and admits that no entry was made in any of the records of the company showing the receipt of such money from the defendant. She testified about an entry on the books of the company showing the receipt of $550 from Otto E. Passman on August 14, 1937, but this could not have reference to the amount which defendant claims to have paid for the reason that the note had not then been signed and defendant does not claim to have made such a payment until the first week or so in September.

Mrs. Thompson states that she gave this receipt to defendant as he requested because she knew that he had paid for the truck, but did not know when he paid for it; that Delos Passman told her the truck was paid for. She took a receipt out of the back of the receipt book numbered 16000 and wrote over this number 15561 to correspond with the duplicate number left in the receipt book. It is obvious from an examination of this duplicate that there was some other writing on it and a different carbon was used in making parts of this last receipt from the carbon used in making the other duplicates following this numbered receipt. Mrs. Thompson had no explanation to make about changing the printed number on the blank receipt to correspond with the duplicate which was partly written over and in dating the receipt back to a time previous to the date that Delos Passman left the state, other than that she knew that defendant had paid for the truck and she wanted to help him out.

■■ We are satisfied, as was the trial judge, that this lady meant no harm by her conduct in issuing this receipt in the manner in which it was issued, but, considering the circumstances under which it was issued, we do not think it has much probative value, much less affording proof of payment. After all, the receipt has only such value as may be given it as evidence of the actual payment of the sum of money specified, and as the person issuing the receipt had no personal knowledge of the payment of the money, the receipt can have no more value than her testimony on the same point.

A collector for plaintiff company testified that he called on defendant for payment of the note about the 27th of November, and defendant then said that the note was paid in November to the Quick Service Auto Company. It is clear that this collector meant to testify that defendant then told him that he had paid an installment of the note to the auto company for on being asked the amount of the note he replied: "$89.93, that is the monthly payments." The witness was then asked if he had occasion to call on the defendant again and he replied that he had called on him again in December and at that time defendant told him that all the note had been paid to the auto company. The witness further states that defendant did not tell him in November about paying all the note but that his brother Delos would take care of it.

■ In the rather uncertain and confused state of the testimony and the unsatisfactory and unconvincing nature of the receipt, we are not in a position to say that the trial judge was in error in holding that the defendant had failed to prove the plea of payment.

■ The note provides for reasonable attorneys fees, to be not less than 15% of the amount due. While we would not be inclined to undervalue the services of the attorneys in this case who were employed to collect the note, yet we do not feel that the situation justifies the imposition of a suit fee on defendant of $50 in addition to the fifteen per cent allowed by the trial court.

For the reasons assigned, the judgment is affirmed at the cost of appellant.